Mamie **HORTON, Individually, and as Administratrix of the Estate of Douglas Powdrill, Deceased, and Milton Patrick, Appellees,**

v.

**Charles a/k/a Pope FLENORY, Jr., Individually and d/b/a The Cash Club, and as de facto Chief of Police; William Dlubak, Individually and as Police Sergeant; Joseph Mangione, Individually and as Police Lieutenant; Robert Kow-** alkowski, Individually and as Police Officer; Edward McAfoose, Individually and as Police Chief; John J. Monaco, Individually and as Mayor; of the City of New Kensington, Commonwealth of Pennsylvania.

**Appeal of CITY OF NEW KENSINGTON and William Dlubak, in his official capacity.**

No. 87–3820.

United States Court of Appeals, Third Circuit.

Originally Submitted Under Third Circuit Rule 12(6) June 22, 1988.

Decided Aug. 18, 1988.

Submitted On Remand from the Supreme Court Sept. 15, 1989.

Decided Nov. 14, 1989.

Louis C. Long and Jane Ann Thompson, Meyer, Darragh, Buckler, Bebenek, Eck & Hall, Pittsburgh, Pa., for appellant, City of New Kensington.

Donald J. McCormick, Wayman, Irvin & McAuley, Pittsburgh, Pa., for appellant, William Dlubak.

Sanford Kelson, Kelson & Slomski, and Alan D. Hertzberg, Pittsburgh, Pa., for appellees.

* Hon. Jane R. Roth, United States District Judge for the District of Delaware, sitting by designa-

Before GIBBONS, Chief Judge, HIGGINBOTHAM, Circuit Judge and ROTH,* District Judge.

OPINION OF THE COURT

GIBBONS, Chief Judge:

The City of New Kensington, Pennsylvania, and Sergeant William Dlubak, a police officer, appealed from a judgment against them and in favor of the Estate of Douglas Powdrill, for Powdrill's wrongful death. The case was tried to a jury which found in favor of the plaintiffs on liability. A separate trial was held on damages, and a separate jury returned a verdict of $65,899.00. Judgment was entered against the City of New Kensington and against Sergeant Dlubak in his official capacity. This court affirmed on August 18, 1988. Thereafter the United States Supreme Court granted petitions for certiorari filed on behalf of these defendants, vacated this court's judgment, and remanded the case for further consideration in light of its opinion in *DeShaney v. Winnebago County Department of Social Services*, — U.S. —, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). — U.S. —, 109 S.Ct. 1334, 103 L.Ed.2d 805. The defendants contend that *DeShaney* compels the conclusion that their motion for a judgment notwithstanding the verdict should have been granted.

I.

In reviewing the denial of a motion for judgment notwithstanding the verdict our review is plenary. We must determine whether, viewing the evidence most favorably for the verdict winner, it is sufficient as a matter of law to support the liability judgment. That evidence discloses that Douglas Powdrill died on November 10, 1982 from injuries received during a severe beating which took place in the Cash Club, an establishment located in New Kensington.

The Cash Club on November 10, 1982 was a private club at which alcoholic bever-

tion.

ages were sold, and which was owned by Charles "Pope" Flenory, who had recently retired from the New Kensington Police Department after eighteen years of service, and who enjoyed a reputation for violence. Shortly before November 10, 1982 the Cash Club was burglarized, and some of the disc jockey's records were taken. Flenory called the New Kensington police and asked Sergeant Dlubak, with whom he had served on the police force, to come to the club. Before Dlubak arrived, however, Flenory and one of the disc jockeys began to interrogate Douglas Powdrill about the burglary. Powdrill, who was a casual employee of the club, was severely beaten.

When Sergeant Dlubak arrived at the club in response to Flenory's request, he also interrogated Powdrill. Powdrill denied participation in the burglary, and mentioned that he had actually informed the club manager, Mrs. Yolanda, about it. Dlubak instructed Powdrill to remain at the club while he went to question Mrs. Yolanda at her apartment. Dlubak returned to the club. His testimony about the scene on his return was as follows:

> Q. Was Mr. Powdrill at any time pleading?
>
> A. No, sir, he was sort of—I wouldn't call it pleading. I would say he was trying to convince Mr. Flenory that he had nothing to do with it, and he was going to help him find out who did it to clear his name.
>
> Q. Are you sure he wasn't pleading with you Mr. Flenory?
>
> A. He was pleading for Mr. Flenory in a sense for he wanted Mr. Flenory to believe him that is the impression I got.
>
> Q. So he was pleading?
>
> A. Well, in that sense, yes.
>
> *   *   *   *   *   *
>
> Q. Did Mr. Powdrill ask you to take him out of that Club?
>
> A. No sir.

A. 979–80. When asked why he did not take Mr. Powdrill from the club, Dlubak explained: "Because I am talking to an ex-policeman, and I worked with 14 years, and I know quite well, I figured that Mr. Powdrill is in good hands." A. 981. See also A. 1013. There is also evidence of an admission made by Sergeant Dlubak to Mamie Horton, Mr. Powdrill's mother. She testified:

> That detective told me he was sorry that he hadn't taken Dougie out of that club; he was crying and asked him to take him out. The detective that was with him said the same thing. I talked to that Detective Dlubak over the phone about four or five times, each time he told me he was sorry he didn't take Dougie out of that club.

A. 133.

The City of New Kensington on September 10, 1982 operated under an official policy, reflected in the Police Department Procedure Manual, that the Department would maintain a hands off policy with respect to events transpiring in private clubs.[1] There is ample evidence that Dlubak's decision to leave Mr. Powdrill in the club in Flenory's "good hands" was made pursuant to that policy, and the defendants do not contend otherwise. There is evidence from which the jury could find that Dlubak suggested in Mr. Powdrill's presence that any further investigation of the burglary be conducted by Mr. Flenory. A. 983. There is also evidence from which the jury could find that Flenory did not want a report filed on the burglary and Dlubak intended to comply with Flenory's wishes in this respect. Id.

Following Dlubak's departure, Powdrill received another beating. Several hours later one of his relatives discovered him at the Cash Club, and noted blood on the walls, and on the shirt of the club's disc jockey. The relative called the police. Two police officers responded, and were

---

[1]. New Kensington Police Procedures Manual, ¶ 6.57 provided:

Request for Service from Private Club
A. When a call is received from a private club, where the complaint is intoxication, the club should be tactfully encouraged to handle its own problem.
B. Such a club is not a public place, and arrests are invalid.

met at the door of the club by Flenory. From Flenory's testimony the jury could find that he admitted to the police officers that a beating had taken place but that it had ended. A. 875. The policemen did not investigate further, and there is evidence from which the jury could conclude that their failure to do so was pursuant to the Township's official policy with respect to private clubs. Dlubak was not disciplined by the Police Department in any way for the manner in which he handled the incident at the Cash Club.

A half hour after the two police officers left the front door of the club, a relative took Mr. Powdrill to the New Kensington hospital, where, shortly thereafter, he died. Only after Dlubak learned of his death did he file a report on the burglary incident.

Thus the jury could have found from the evidence (1) that New Kensington had an official policy of letting private clubs police themselves; (2) that, acting pursuant to that policy and under color of state law, Sergeant Dlubak left the investigation of the burglary in Flenory's "good hands"; (3) that Sergeant Dlubak facilitated Flenory in carrying out the police function of interrogating Mr. Powdrill, by going next door to inquire if, as Powdrill claimed, he had reported the burglary to Mrs. Yolanda, and by suggesting in Mr. Powdrill's presence that any further investigation would be done by Mr. Flenory; (4) that Sergeant Dlubak was aware Mr. Powdrill had already been mistreated and was in fear; (5) that Mr. Powdrill requested that he be taken from the Cash Club but Sergeant Dlubak did not do so; (6) that Mr. Powdrill was in custody in the Cash Club, and the denial of his request to be taken from the club confirmed both to Flenory and to Mr. Powdrill that the police department approved of his continued custody there; (7) that during that continued custody, Mr. Flenory's further investigation of the burglary was pursued by methods which for Mr. Powdrill proved to be fatal.

## II.

The defendants contend that the evidence outlined above is legally insufficient to support a liability judgment under 42 U.S.C. § 1983 (1982) either against Sergeant Dlubak or against New Kensington. According to the defendants, *DeShaney v. Winnebago County Department of Social Services*, —— U.S. ——, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), stands for the proposition that there are no circumstances in which a municipality or a police officer has any obligation to protect persons from private violence.

■ *DeShaney* certainly stands for the harsh proposition that even though state officials know that a person is in imminent danger of harm from a third party, the fourteenth amendment imposes upon those state officials no obligation to prevent that harm. This holding is limited, however, to situations in which the state is not involved in the harm, either as a custodian or as an actor. *DeShaney* harmonizes two earlier decisions, *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) and *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), by acknowledging the significance of custody.

> [W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs ...[,] it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

109 S.Ct. at 1005–06. Moreover, as we recently noted in *Stoneking v. Bradford Area School District*, 882 F.2d 720, 725 (3d Cir.1989), "[n]othing in *DeShaney* suggests that state officials may escape liability arising from their policies maintained in deliberate indifference to actions taken by their subordinates." *See City of Canton v. Harris*, —— U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (government body may be sued for constitutional deprivations visited pursuant to governmental "custom" or "policy"). *See also Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Thus the defendants are entitled to judgment notwithstanding the ver-

dict only if Mr. Powdrill's death occurred at a time when he was entirely outside state custody and only if that death was not the result of an official policy or custom.

## A. Custody

*DeShaney* requires that the state have imposed some kind of limitation on a victim's ability to act in his own interests. While specifically referring to imprisonment and institutionalization—the *Estelle* and *Youngberg* examples—the court acknowledges that other similar state-imposed restraints of personal liberty will trigger a state duty to prevent harm. 109 S.Ct. at 1006 & n. 9. One question presented by the Supreme Court's remand, therefore, is whether the evidence referred to in Part I above suffices to permit a finding that Mr. Powdrill was in state custody at the time of his fatal beating.

■ We hold that it does. The City of New Kensington adopted an official policy which relegated law enforcement in private clubs to the proprietors of those clubs. Such an owner—in this case a retired police officer obviously familiar with that policy— undertook an investigation of a burglary. During the course of that interrogation, he subjected Mr. Powdrill to restraint of his liberty. At the same time he called for the assistance of the New Kensington police, and in the person of Sergeant Dlubak, the police responded by confirming both to Flenory and Mr. Powdrill that Mr. Powdrill would be left in Flenory's "good hands". Thus Dlubak, acting upon an event in progress—the custodial interrogation of a suspect—pursuant to an official police policy, confirmed that this custodial interrogation could continue. Even if one were to posit that the custodial relationship between the owner of the Cash Club and Mr. Powdrill was, up to the time of Sergeant Dlubak's arrival, purely private, his arrival, his interrogation, his direction to Mr. Powdrill to remain seated while he went next door to investigate Mr. Powdrill's story, and his refusal to remove Mr. Powdrill from the club significantly changed the nature of the custody. Flenory was given carte blanche to continue his custodial interrogation as a part of his investigation

into a burglary, because it was the official policy of the New Kensington Police Department to defer to private law enforcement with respect to private clubs.

Unlike the passive role of the neglectful social workers in *DeShaney*, the role of the state actor here, Sergeant Dlubak, could be found from the evidence to be anything but passive. Evidence which could be credited suggests that he used his official status to confirm that Flenory was free to continue the custodial interrogation even though Mr. Powdrill was in fear for his safety and wanted to leave. Clearly, Sergeant Dlubak was a participant in the custody which led to the victim's death.

Sergeant Dlubak's role in the custody which led to Mr. Powdrill's death is sufficient by itself to prevent judgment notwithstanding the verdict. A further bar to such relief is the evidence respecting Flenory's role. From the evidence the jury could find that New Kensington delegated to Flenory its traditional police functions. As the Supreme Court teaches in *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785–86, 73 L.Ed.2d 534 (1982), a state can be held responsible for a private action if the private actor has exercised coercive power with significant encouragement, overt or covert, from the state. *See Magill v. Avonworth Baseball Conference*, 516 F.2d 1328, 1331 (3d Cir.1975) (delegation converts private actors to state actors where there is private performance of a governmental function). The function of investigating crimes is clearly a governmental function. An official policy of deferring to private owners with respect to the investigation of crimes in private clubs, which the jury could have found from the evidence, suffices to permit a legal conclusion that Flenory, maintaining custody over Mr. Powdrill, was exercising a delegated state function. Thus even apart from Sergeant Dlubak's role in the custody, Flenory's role also precludes judgment notwithstanding the verdict.

## B. Policy

■ Our discussion of the custody issue suffices to affirm the denial of the defen-

dants' motion for judgment notwithstanding the verdict. The evidence with respect to the city's policy of deferring to private law enforcement in private clubs, which Sergeant Dlubak implemented, also places this case outside *Deshaney* and within *City of Canton v. Harris,* — U.S. —, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The jury could have found from the evidence that this deliberate policy choice, duly implemented, exposed Mr. Powdrill to the risk that his constitutional right to be free from coercive custodial interrogation for purposes of law enforcement would be violated. That policy, the jury could find, resulted in Mr. Powdrill's interrogation in connection with a burglary investigation by a person not subject to the discipline of the Police Department, and thus likely to go to unlawful extremes. As in *Stoneking v. Bradford Area School District,* 882 F.2d 720, 725 (3d Cir.1989), a factfinder could find that, with deliberate indifference to the consequences, the City of New Kensington established and maintained, and Sergeant Dlubak enforced, a policy, practice or custom which caused Mr. Powdrill harm. In this case it was the ultimate constitutional harm of death at the hands of an overzealous enforcer of the law.

### III.

The only contention which the defendants have made on appeal is that the court erred in denying their motion for judgment notwithstanding the verdict. Exercising plenary review, we find no such error. The judgment appealed from must therefore be affirmed.