**Willie Gene HARRINGTON, Plaintiff,**

v.

**Henry N. GRAYSON, et al., Defendants.**

**Civ. A. No. 90–CV–70336–DT.**

United States District Court,
E.D. Michigan, S.D.

April 30, 1991.

Willie Gene Harrington, in pro. per.

Frank Kelley, Atty. Gen., and Deborah K. Isom, Asst. Atty. Gen., Corrections Div., Lansing, Mich., for defendants.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

The instant matter arises from the alleged inadequate medical treatment that the Plaintiff, Willie Gene Harrington, received at certain state correctional facilities within the State of Michigan. On November 15, 1989, Harrington was treated for a recurring problem with the large toe on his right foot by the medical staff at the Health Care Unit of the Charles Egeler Correctional Facility (Egeler Facility). Nearly two weeks later (November 27, 1989), Harrington, despite having a scheduled appointment, was refused admission to the Duane Waters Hospital (Hospital) because he was not wearing state issued shoes. It appears that sometime during the morning of November 27th, co-Defendant, Henry N. Grayson, Warden of the Egeler Facility, had instructed his staff members to prohibit prisoners from wearing their personal shoes into the hospital.[1]

---

1. Corrections Officer R. Hoenes was also named as a Defendant in this matter. However,

In January 1990, Harrington was treated by Dr. John Voulgaris at the Hospital who prescribed "softer" shoes as one method of easing his pain. Thereafter, Harrington's family and Voulgaris each sought to obtain "softer" shoes for him.[2] Although the shoes that had been ordered by his family arrived at the Egeler Facility in early 1990, Harrington did not receive them. In August 1990, after being transferred to the Lakeland Correctional Facility, Harrington was finally given the shoes that had been sent to him by his family.

On February 7, 1990, Harrington initiated this lawsuit under 42 U.S.C. § 1983, in which he asserted that Grayson's conduct had violated his rights under the First, Eighth, and Fourteenth Amendments. Thereafter, Grayson filed a motion for summary judgment, contending that he is entitled to absolute immunity under the Eleventh Amendment because he had acted in his official capacity during all of the times relevant to these proceedings.[3]

On February 22, 1991, Magistrate Judge Steven Pepe issued a Report and Recommendation in which he concluded that the Eleventh Amendment only protected Grayson in his *official* capacity and recommended that his motion for summary judgment be denied. Subsequently, Grayson submitted timely objections. For the reasons that have been set forth below, this Court will accept the recommendation of Magistrate Judge Pepe and adopt his Report by reference.

## I.

42 U.S.C. § 1983 reads, in pertinent part,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

Originally passed in 1871 as part of the Ku Klux Klan Act, § 1983 did not garner much legal attention until the decision by the Supreme Court in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1960). Since that time, this statute has become one of the primary sources of relief for those individuals who seek redress for violations of their constitutional rights. *See, e.g.*, M. Schwartz and J. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees*, (1986).[4]

In the thirty years that have elapsed since *Monroe*, the Supreme Court has had many opportunities to delineate the framework of the § 1983 cause of action. *See, e.g., Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Recently, in *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court determined yet another contour of the § 1983 action. In *Will*, the Court concluded that, for the purposes of § 1983, "neither a State nor its officials acting in their official capacities are "persons"...." 491 U.S. at 71, 109 S.Ct. at 2312.

Since *Will*, two decisions by the Sixth Circuit Court of Appeals have cast doubt upon the ability of a plaintiff to sue a state actor in his individual or personal capacity under § 1983. First, in *Rice v. Ohio Dep't of Transp.*, 887 F.2d 716 (6th Cir.1989) and then in *Cowan v. University of Louisville School of Medicine*, 900 F.2d 936 (6th Cir. 1990), *Will* has been cited as support for

---

2. Harrington's family obtained shoes for him from an outside source, and Voulgaris ordered a pair of shoes through the state vendor system.

3. The Court notes that Grayson failed to raise any claims concerning qualified immunity.

4. In the foreword, the authors state that "§ 1983 has become, by far, the most significant [civil

rights statute].... After, *Monroe*, civil rights litigation against state and local governmental officials began to flow into the federal courts.... In sheer volume of litigation it produced, § 1983 is unprecedented."

the proposition that damage suits, in which the aggrieved party seeks redress from a state actor in his individual capacity, are unavailable under § 1983. In the instant matter, it is this interpretation that Grayson encourages this Court to accept.

## II.

In his Report and Recommendation, Magistrate Judge Pepe undergoes an extensive evaluation of (1) Eleventh Amendment caselaw, (2) the decisions in *Will, Rice,* and *Cowan,* and (3) current interpretations of § 1983. Based upon this analysis, he concluded:

> The [D]efendant's position in the present case is that state officials, even when sued in their "individual capacity," are still immune from suits as long as they were acting in their official capacity when the alleged constitutional tort was committed. Such a position is clearly contrary to *Scheuer v. Rhodes* and other case authority.... I firmly believe that the Supreme Court in *Will* did not overrule *Scheuer v. Rhodes,* nor would the Sixth Circuit presume to do so.

In his objections, Grayson asserts that the Eleventh Amendment and the concept of sovereign immunity does apply to the situation before this Court. He further contends that the manner in which the *Will* decision was utilized by the *Rice* and *Cowan* courts has not been rejected by other jurisdictions. Moreover, Grayson argues that in the case relied upon by the Magistrate Judge, the Eleventh Amendment was not raised as a defense on the behalf of individuals. Lastly, he submits that the analysis in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), is applicable only when allegations have been made that an individual has acted outside the scope of his official authority.

## III.

The Court does not believe that any controversy exists over the purposes and applicability of the Eleventh Amendment and sovereign immunity. Hence, it will not address Grayson's assertions regarding this issue.

In *Rice,* after citing *Will* and concluding that the individual defendants were not persons under § 1983 in their official capacity, the Court of Appeals noted that the complaint alleged that state officials had committed the claimed transgressions in their individual and official capacities. At this point, the Court opined that "the capacity in which the individual defendants were in fact acting is what matters, not the capacity in which they were sued". 887 F.2d at 719. It is this language which Grayson advances as the Sixth Circuit interpretation of *Will.* However, for several reasons, the Court is not persuaded that the passage in *Rice* and subsequently cited within the *Cowan* case has the clear precedential value that Grayson advocates.[5]

First, in each case, the passage at issue appears superfluous to the actual reasoning and analysis of the respective decisions. In *Rice,* despite the statement, the Court gave its reasons of why recovery was unavailable. In *Cowan,* after the Court had completed its evaluation of the parties' arguments, the language from *Rice* is placed at the end of the opinion.

Second, in his objections, Grayson seeks to establish that the cases, which were relied upon by the Magistrate Judge, are distinguishable because none of the defendants raised an Eleventh Amendment immunity defense exclusively. However, there is no indication that any of the defendants in *Rice* or *Cowan* solely asserted Eleventh Amendment immunity as the basis of their defense, as Grayson does in this matter. In *Rice,* the district court granted summary judgment in favor of the individual defendants. While the basis of its decision is unclear, it is inconceivable that use of the Eleventh Amendment to bar personal liability would not have (1) been a primary appellate issue, or (2) generated some mention in the opinion.

Similarly, in *Cowan,* the State raised the defenses of sovereign and qualified immu-

---

**5.** In fact, in the *Cowan* decision, one judge wrote a separate concurrence to announce his disapproval of the unnecessary adoption of the language of *Rice.*

nity. In its decision, the district court used sovereign immunity as the basis for barring suit against the University of Louisville and qualified immunity to protect the individual defendants from liability under § 1983. Thus, the precise issue raised here was not before the panels in *Rice* and *Cowan.*

Third, no other circuit has advanced this interpretation of *Will.* In cases in which the plaintiff has attempted to sue state actors in both their official and individual capacities, and the State has raised both sovereign immunity and qualified immunity defenses, the Court has been unable to locate another jurisdiction in which a district or a circuit court has attempted to interpret *Will* as barring individual capacity suits. *See, Oliver Schools, Inc. v. Cornelius J. Foley, et al.,* 930 F.2d 248 (2nd Cir.1991) (order of dismissal against individual defendants vacated to allow plaintiff opportunity to amend complaint to assert claims against defendants in their personal capacities); *Molinelli v. Tucker,* 901 F.2d 13 (2nd Cir.1990) (district court's rejection of Eleventh Amendment immunity defense with respect to individual capacity claims was not reviewed by appellate court.); *Melo v. Hafer,* 912 F.2d 628 (3rd Cir.1990) (*Will* and prior Eleventh Amendment case law utilized to determine that claims against state actors sued in their personal capacities are not barred by Eleventh Amendment.); *Chrissy F. By Medley v. Mississippi DPW,* 925 F.2d 844 (5th Cir. 1991) (Eleventh Amendment does not bar damage suits against state officials in their official capacities); *Price v. Akaka,* 915 F.2d 469, 473 (9th Cir.1990) ("A suit against trustees in their individual, rather than official, capacities ... is not barred by the Eleventh Amendment."); *Arnold v. McClain,* 926 F.2d 963 (10th Cir.1991) (dismissal of official capacity claim under Eleventh Amendment and dismissal of individual capacity claims under other immunities affirmed).[6]

These cases and others substantiate the conclusion that *Will* does not eliminate individual capacity suits under § 1983. This Court does not believe that the Sixth Circuit via the language contained in *Rice* has effectively renounced well established Eleventh Amendment and § 1983 law. Similarly, this Court cannot conclude that the Sixth Circuit, without having the issue firmly before it, intended to promote the radically expansive doctrine that Grayson asserts.

## IV.

Finally, Grayson argues that *Scheuer* is consistent with his position that an individual capacity suit is determined by whether or not an individual acts outside the scope of his authority. This Court disagrees.

The specific facts in *Scheuer* indicate that the plaintiffs' alleged wrongdoing which amounted to the "undertaking [of] actions, ... either outside the scope of [ ] respective office, or, if within the scope, ... in an arbitrary manner, grossly abusing the lawful powers of office." 416 U.S. at 235, 94 S.Ct. at 1686. Analyzing the issue of whether or not the Eleventh Amendment provided a bar, the Court, using much of the same analysis that it employed in *Will,* firmly stated:

> [I]t has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law.

416 U.S. at 237, 94 S.Ct. at 1687.

The *Scheuer* decision—standing alone—might provide Grayson's argument with some support. However, when *Scheuer* is evaluated in the context of the numerous decisions that have been rendered since then which also contribute to the framework of this § 1983 analysis, it becomes readily apparent that the Supreme Court

---

6. Unpublished decisions in other circuits also distinguish between official and individual capacity suits for the purposes of Eleventh Amendment immunity. *See, Ramos v. Fogarty,* 930 F.2d 906 (1st Cir.1991); *Romero v. Lane,* 918 F.2d 959 (7th Cir.1990). Moreover, unpub-lished *per curiam* decisions of the Sixth Circuit indicate that the position of *Rice* and *Cowan* are not yet fully established within the appellate court. *See, Quigley v. Wilson,* 925 F.2d 1465 (6th Cir.1991); *Wells v. Brown,* 929 F.2d 702 (6th Cir.1991).

has not set forth the pleading requirement that he endorses.

■ In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court established and defined the parameters of the qualified immunity defense for state officials who were sued in their individual capacities. In *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Court delineated the distinctive attributes of individual and official capacity suits. Both of these cases and others form the basis for the current interpretation of the § 1983 cause of action. The Supreme Court labors with each new decision to articulate the contours of the § 1983 action. However, the requirement that the plaintiff must somehow allege an aberration of authority to establish personal liability under § 1983 is absent in the jurisprudence to date. As such, the Court finds Grayson's contention untenable.

## V.

■ Accordingly, the Court will accept the Report and Recommendation submitted by Magistrate Judge Steven Pepe, and incorporate his excellent analysis by reference.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STEVEN D. PEPE, United States Magistrate Judge.

A. BACKGROUND

Plaintiff Willie Harrington, a prison inmate, has brought this action against Warden Henry N. Grayson of the Charles Egeler Correctional Facility,[1] where plaintiff was formerly housed, asserting that defendant Grayson, through direct actions and through regulations issued to his staff, denied plaintiff medical care and special shoes which would accommodate plaintiff's foot problem. Plaintiff asserts further

that all of this was done in retaliation against him for his legal activities. He has sued Grayson in both his official and individual capacity. Plaintiff's complaint, as amended, makes claims under the First, Eighth, and Fourteenth Amendments to the United States Constitution, as well as pendant state claims. Plaintiff seeks damages and injunctive relief.

The record shows that on November 13, 1989, plaintiff sent a "kite" claiming that he had trouble wearing shoes due to a problem with a broken toe from a few years earlier. An appointment with the Health Care Unit was scheduled for November 15. The records submitted at the hearing on this motion for summary judgment (held in conjunction with a motion for a preliminary injunction) show that on November 15, 1989, plaintiff was seen at the Health Care Unit for recurrent problems with his large toe and a bunion on his right foot, for which plaintiff had received steroid injections. The Department of Corrections (D.O.C.) Health Care Unit progress notes show that plaintiff was referred for an orthopedic examination.

On November 27, 1989, when plaintiff was scheduled for an appointment at the Duane Waters Hospital of the Egeler Facility, he was denied admission to the hospital for his examination due to the fact that he was wearing tennis shoes at the time, and not State issued shoes. On that morning, Defendant Grayson had posted a notice instructing his staff to insure that prisoners entering Duane Waters Hospital were wearing State issued shoes, and not personal shoes. While an earlier notice had been posted on or about September 19, 1989, requiring that prisoners receiving treatment be dressed in "State blues," that notice had not included notice that State shoes were also required. Plaintiff's complaint asserts that the rule was promulgated in violation of the notice requirements applicable to the Department of Corrections.

---

1. Plaintiff has also named Corrections Officer R. Hoenes as a defendant. Hoenes has not yet been served.

The medical evidence shows that plaintiff was later seen by Dr. John Voulgaris, D.P.M., at the Duane Waters Hospital on January 5, 1990, who ordered plaintiff a special pair of State shoes that were EEEE, with soft sides and soles, to help in the treatment of plaintiff's foot problem. Plaintiff's family also ordered an extra wide pair of tennis shoes to accommodate his need for soft shoes with soft soles while he awaited the special State issued shoes prescribed by Dr. Voulgaris. Plaintiff claims that defendant Grayson refused to allow him to have these tennis shoes.

In an amendment to his complaint, plaintiff asserts that even after he was transferred to Lakeland Correctional Facility (LCF) in May 1990, defendant Grayson, when forwarding plaintiff's tennis shoes to LCF, urged the staff not to give them to plaintiff. The tennis shoes ordered by his family arrived at LCF in July 1990; plaintiff did not receive them until mid-August. The State shoes ordered by Dr. Voulgaris in early 1990 had not arrived as of February 1991.

Defendant Grayson's initial response to the Complaint was to file a motion for summary judgment asserting that because defendant Grayson was acting at all times in his official capacity as Warden, he is entitled to absolute immunity in this Court under the Eleventh Amendment. The plaintiff's Complaint (¶ 3) asserts that "[defendant Grayson] is sued in his individual and official capacities." The current motion for summary judgment does not raise any qualified immunity or sufficiency of the evidence claims upon which Warden Grayson may be entitled to relief. Thus, I shall limit this Report solely to the Eleventh Amendment sovereign immunity defense for a state official who is sued in both his individual and official capacity.

Defendant Grayson filed an affidavit in support of his motion for summary judgment admitting that he did instruct his staff to insure prisoners entering Duane Waters Hospital wear State issued shoes and not personal shoes. He claims that this policy was instituted as a security measure to help staff differentiate between prisoners and staff; plaintiff challenges this explanation as a pretextual justification, claiming that prisoners are identified by their State blues (clothing), not their shoes. Defendant Grayson also states that he was not aware of plaintiff's foot problems. He asserts that at all times he acted in good faith and in accordance with his understanding of the rules, policies, and statutes of the Michigan Department of Corrections. Defendant Grayson states that his affidavit is made in his official capacity as Warden of the Charles Egeler Correctional Facility. While the affidavit does not state that defendant Grayson's November 1989 instructions to other D.O.C. staff were also made in his official capacity as Warden, I shall assume for purposes of this motion that Warden Grayson was at all relevant times acting in his official capacity.

Defendant asserts that the Sixth Circuit in *Rice v. Ohio Dep't of Transp.*, 887 F.2d 716, 719 (6th Cir.1989), *vacated on other grounds*, —— U.S. ——, 110 S.Ct. 3232, 111 L.Ed.2d 744 (1990), and *Cowan v. University of Louisville School of Medicine*, 900 F.2d 936, 942 (6th Cir.1990), has interpreted *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), as precluding a suit for damages against state officials acting in their official capacity. Defendant acknowledges that he has been sued by the plaintiff in both his individual and official capacity, but he asserts that *Will*, *Rice*, and *Cowan* do not allow a circumvention of sovereign immunity by "a mere pleading device."

**B. ANALYSIS OF *WILL* AND ITS SIXTH CIRCUIT INTERPRETATION**

Under the Eleventh Amendment to the United States Constitution, states cannot be sued for damages in federal court. The Eleventh Amendment does not prohibit litigation for damages against a state in state court. The Supreme Court in *Will v. Michigan Dep't of State Police*, however, determined that states were not "persons" within the meaning of 42 U.S.C. § 1983, and thus they could not be sued under § 1983 in state court. In precluding § 1983 damages against states in state

courts, the Supreme Court in *Will* used statutory grounds, not constitutional ones. The *Will* Court undertook a statutory interpretation of what the 42nd Congress intended in 1871 when it used the term "person" in the Ku Klux Klan Act, which was the predecessor to 42 U.S.C. § 1983. While the Supreme Court could not use the Eleventh Amendment to bar actions in state courts against a state, the Court did look to the constitutional policy of Eleventh Amendment immunity as well as common law principles of official immunity to define the parameters of Congress' thinking in 1871. As a result of this analysis, the Supreme Court found that the Congress did not intend states to be "persons" as that term is used in § 1983.

Having determined that states could not be sued under § 1983 for damages in state courts, the Supreme Court went on to note that plaintiffs could not circumvent this ruling by merely naming a state official instead of the state entity as the defendant. The Court reasoned:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985). As such, it is no different from a suit against the State itself. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165–166, [105] S.Ct. 3099, 3104–3015, 87 L.Ed.2d 114 (1985); *Monell* [*v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978)]. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.

*Will*, 109 S.Ct. at 2311–12. As a footnote to this paragraph, the Court added:

> Of course a State official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S., at 167, n. 14, 105

S.Ct., at 3106, n. 14; *Ex Parte Young*, 209 U.S. 123, 159–160, 28 S.Ct. 441, 453–454, 52 L.Ed. 714 (1908). This distinction is "commonplace in sovereign immunity doctrine." L. Tribe, American Constitutional Law § 3–27, p. 190, n. 3 (2d ed. 1988), and would not have been foreign to the 19th-century Congress that enacted § 1983, *see, e.g., In re Ayers*, 123 U.S. 443, 506–507, 8 S.Ct. 164, 183–184, 31 L.Ed. 216 (1887); *United States v. Lee*, 106 U.S. 196, 219–222, 1 S.Ct. 240, 259–262, 27 L.Ed. 171 (1882); *Board of Liquidation v. McComb*, 92 U.S. 531, 541, 23 L.Ed. 623 (1876); *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824)....

*Id.* 109 S.Ct. at 2311–12 n. 10.

The Court concluded, "[w]e hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* 109 S.Ct. at 2312. Since the *Will* decision, some confusion has arisen as to the meaning of this language.

In *Rice v. Ohio Dep't of Transp.*, 887 F.2d at 716, before upholding summary judgment on the merits of plaintiff's claims of constitutional violations and conspiracy, the two-judge majority noted that *Will* would suggest that the two individual defendants from the Ohio Department of Transportation were not "persons" covered by § 1983 because they were acting in their official capacity. Mr. Rice had filed a reverse sex discrimination claim in 1976. He asserted in a later civil rights suit that, because of this earlier claim, he was discriminated against in the denial of a temporary promotion, and ultimately of a full promotion, to an Administrative Assistant IV position at the Ohio Department of Transportation. Plaintiff contended that the job was given to a younger man, and that plaintiff was told that he was passed over because of his earlier sex discrimination charge as well as his failure to contribute enough money to the Republican Party. *Id.* at 718. Mr. Rice sued the Ohio Department of Transportation, as well as its Director and Deputy Director, under 42 U.S.C. §§ 1983 and 1985, along with other federal claims later dismissed by stipula-

tion. In *Rice,* the district court entered summary judgment for the defendants on all counts.

The Court of Appeals, in an opinion by Circuit Judge David A. Nelson, in considering plaintiff's § 1983 claim, cited the above-quoted language from *Will,* and concluded:

> Insofar as the director and deputy director were acting in their official capacities, it is now clear that they, like the state itself, were not "persons" within the meaning of § 1983.
>
> \*   \*   \*   \*   \*   \*
>
> Although the complaint filed by Mr. Rice alleges at one point that the individual defendants were acting both "in their official and personal capacities," the record does not suggest in any way that the defendants' actions were somehow unofficial. *The capacity in which the individual defendants were in fact acting is what matters, not the capacity in which they were sued;* congressional intent is not to be circumvented, *Will* says, "by a mere pleading device." But even if we were to assume that the defendants acted in a personal capacity—and the district court made no finding on this point—we are persuaded, for reasons to which we now turn, that there could be no recovery here.

887 F.2d at 718–19 (emphasis supplied). Obviously, if the director and deputy director of the Ohio Department of Transportation were not "persons" under 42 U.S.C. § 1983, they could not be "persons" under 42 U.S.C. § 1985 either. Because these findings by the Court of Appeals would divest the federal court of federal jurisdiction under either § 1983 or § 1985, the Court could have ended there. Yet, the majority went on to examine plaintiff's First Amendment claims and concluded that they were without merit. Without discussing the *Will* issues specifically, Circuit Judge Boyce F. Martin, Jr., dissented in the Court's dismissal of plaintiff's § 1983 First Amendment claim.

In *Cowan v. University of Louisville School of Medicine,* 900 F.2d 936 (6th Cir. 1990), the Sixth Circuit again used *Will* and *Rice* as an alternate justification for upholding summary judgments for the individual defendants. In *Cowan,* plaintiff was dismissed from the Louisville School of Medicine after he failed two courses. Prior to failing the second course, plaintiff had been given a warning that he was on probation and would be subject to dismissal if he failed another course. After filing eight unsuccessful grievances with the Student Activities Grievance Committee of the School of Medicine, plaintiff filed a complaint in the state court against the University of Louisville School of Medicine, as well against Dr. Darrell Franks. Dr. Franks was a psychiatrist at the School of Medicine who plaintiff had chosen to see concerning certain behavioral problems he had experienced. Plaintiff also filed an action in federal court against Drs. Donald Kmetz and Leah Dickstein under the Family Educational Rights and Privacy Act and under 42 U.S.C. §§ 1983 and 1985(3). Dr. Kmetz was the Dean of the School of Medicine, and Dr. Dickstein was the Associate Dean for Student Affairs.

In considering Cowan's § 1983 claims, the majority opinion by Judge Ralph Guy first determined that under Kentucky law, plaintiff had not stated a due process claim, because he could not establish that he had a liberty or property interest in his reputation. *Cowan,* 900 F.2d at 942 (citing *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). The Court next considered plaintiff's allegations that Deans Dickstein and Kmetz engineered his dismissal because of a personal vendetta and conspired to have him dismissed in order to placate another colleague who was seeking the attention of the plaintiff's prior girlfriend, and that they faked his academic failure to accomplish this result. The Court rejected these claims, noting that "we find no support [in the facts] for plaintiff's fanciful conspiracy theory." *Id.*

Only after demonstrating that plaintiff had no claim on the merits did Judge Guy's opinion in *Cowan* go on to state:

> In *Rice v. Ohio Department of Transportation,* 887 F.2d 716, 719 (6th Cir. 1989), we declared our unwillingness to allow a plaintiff to circumvent Congress'

intent that states not be sued under 42 U.S.C. § 1983 " 'by a mere pleading device.' " (Quoting *Will v. Michigan Dep't of State Police,* [491] U.S. [58,] 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989)). In *Rice,* we stated that:

> [T]he record does not suggest in any way that the defendants' actions were somehow unofficial. The capacity in which the individual defendants were in fact acting is what matters, not the capacity in which they were sued.... 887 F.2d at 719. In the case before us, we see no evidence whatsoever that either Dickstein or Kmetz were acting in anything other than their official capacities, and therefore are unwilling to engage in a review of the process accorded plaintiff in his dismissal from medical school. To do so would be to, in effect, entertain plaintiff's claim against the University of Louisville—a task which the eleventh amendment, and the principles of sovereign immunity it implies, removes from our jurisdiction.

*Id.* at 942–43.

This alternate ruling was unnecessary because Judge Guy had found no constitutional claim under the Fourteenth Amendment, nor in Cowan's fanciful conspiracy theory. Judge Harry Wellford concurred in the decision but disagreed with the necessity or the correctness of the *Rice* and *Will* analysis. Judge Wellford stated

clearly that he did not view *Will* as barring § 1983 suits against state officials whenever the suits concern actions taken in their official capacity.[2]

## C. Sovereign Immunity—Its Application and Limits

### 1. Eleventh Amendment Immunity of the States:

■ A state's sovereign immunity under the Eleventh Amendment bars an action *in federal court* against a state or a state agency for money damages. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (*Pennhurst II*).[3] This immunity extends to suits nominally against a state official instead of the state itself where the suit seeks "to impose a liability which must be paid from public funds." *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974), *citing Ford Motor Co. v. Department of Treasury of State of Indiana,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). *Edelman* involved a suit against a state official, requiring retroactive payment of welfare benefits which would, in part, come from the state treasury. The Supreme Court noted in *Edelman* that prospective injunctive relief was permitted under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), even if it has "an ancillary effect on the state

---

2. In a case decided subsequent to *Cowan,* it is clear that Judge Guy continues to abide by the well established premise that plaintiffs can sue state officials in their individual capacity for violation of constitutional rights when those defendants were acting in their official roles. In *Walker v. Norris,* 917 F.2d 1449 (6th Cir.1990), two corrections officers at the Tennessee State Penitentiary had been found liable by the district court below for violation of plaintiff's Eighth Amendment rights. The Court in *Walker* upheld Eighth Amendment claims against two corrections officers, Ritz and Jordan, who, while on duty at the prison, failed to respond adequately to avoid an assault and knifing which led to the plaintiff's death. One of the corrections officers failed to open a door through which the plaintiff could have escaped from the assaultive inmate, and corrections officer Jordan had failed to respond in a manner to protect plaintiff and, indeed, at one point, pulled another corrections officer off the attack-

ing inmate when he realized the latter had a knife. The jury assessed compensatory damages at $175,000 against these two defendants, which was also upheld.

In *Walker,* Judge Guy found legally sufficient evidence to uphold a finding that two of the corrections officers violated the plaintiff's Eighth Amendment rights by failing to prevent another inmate from killing him. While Judge Guy, in another portion of that opinion, quoted *Will* for the proposition that certain other corrections officers could only be subject to liability in their individual capacity, there is no mention of this *Will* issue with respect to the two corrections officers who were individually found liable for Eighth Amendment violations.

3. *Pennhurst State School & Hosp. v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) (*Pennhurst I*), dealt with statutory interpretation of the Developmentally Disabled Assistance and Bill of Rights Act.

treasury." *Edelman v. Jordan,* 415 U.S. at 668, 94 S.Ct. at 1358.

The Supreme Court in *Will* added that a state could not be sued in a *state court* for violation of 42 U.S.C. § 1983 because a state is not a "person" for purposes of suits for damages, within the meaning of that Act. The Court, however, reiterated the well established principle that a state officer could be sued in his official capacity for injunctive relief because "official capacity actions for prospective relief are not treated as actions against the state." *See Will v. Michigan Dep't of State Police,* 109 S.Ct. at 2311 n. 10 (quoted *supra* ).

### 2. SUITS AGAINST STATE OFFICIALS IN THEIR INDIVIDUAL CAPACITY ARE NOT BARRED BY SOVEREIGN IMMUNITY:

■ Prior to *Will,* it was clearly established that suits against state officials in their individual capacity do not seek money from the state and are therefore not barred by the Eleventh Amendment. Similarly, such officials are "persons" within the meaning of 42 U.S.C. § 1983. *See, e.g., Scheuer v. Rhodes,* 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974); *Berndt v. State,* 796 F.2d 879, 882 (6th Cir.1986); *Graham v. National Collegiate Athletic Ass'n,* 804 F.2d 953, 959–60 (6th Cir.1986); *Banas v. Dempsey,* 742 F.2d 277, 284 n. 10 (6th Cir.1984), *aff'd sub nom., Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985); *Foulks v. Ohio Dep't of Rehabilitation & Correction,* 713 F.2d 1229, 1233 (6th Cir.1983).

In *Scheuer v. Rhodes,* state officials were named as defendants. The Supreme Court noted:

[I]t has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law. *Ex parte Young* teaches that when a state officer acts under a state law in a manner violative of the Federal Constitution, he

comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or

representative character and is subjected *in his person* to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States. [*Ex parte Young,* 209 U.S.] at 159–160, 28 S.Ct. at 454. (Emphasis supplied.)

\* \* \* \* \* \*

[D]amages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office.

\* \* \* \* \* \*

Whatever the plaintiffs may or may not be able to establish as to the merits of their allegations, their claims, as stated in the complaints, given the favorable reading required by the Federal Rules of Civil Procedure, are not barred by the Eleventh Amendment. Consequently, the District Court erred in dismissing the complaints for lack of jurisdiction.

416 U.S. at 237–38, 94 S.Ct. at 1687.

This statement of the limits of Eleventh Amendment immunity is consistent with our common law of sovereign immunity. In England, while the sovereign individually could not be sued, the courts of England would allow process to issue against the King's officers. The unlawful acts of the King's officers were not treated as acts of the sovereign. 1 W. Blackstone, Commentaries 244, *cited in Pennhurst II,* 465 U.S. at 142–43, 104 S.Ct. at 930–31 (Stevens, J., dissenting). This exception was recognized in the fifteenth century. *See* 3 W. Holdsworth, A History of English Law 338 (1903). This doctrine was commonly used in the seventeenth century as a means by which the citizens could curb the abuses of the King without directly confronting the King in court. It was firmly established law by the eighteenth century. 10 W. Holdsworth, *supra,* at 650–52. This common law principle was adopted by the courts of this country. *See, e.g., Belknap v. Schild,* 161 U.S. 10, 16 S.Ct. 443, 40 L.Ed. 599 (1896). The distinction permitting suit against state officials also took root in our Eleventh Amendment jurispru-

dence. *See Smyth v. Ames*, 169 U.S. 466, 518–19, 18 S.Ct. 418, 423, 42 L.Ed. 819 (1898); *Pennoyer v. McConnaughy*, 140 U.S. 1, 10–12, 11 S.Ct. 699, 701–02, 35 L.Ed. 363 (1891); *Poindexter v. Greenhow*, 114 U.S. 270, 288, 5 S.Ct. 903, 912–13, 29 L.Ed. 185 (1885). As noted in 3 W. Holdsworth, A History of English Law 338 (1903), notwithstanding the premise that the King could do no wrong, the King's officers

> could do wrong, and if they committed wrongs, whether in the course of their employment or not, they could be made legally liable. The command or instruction of the King could not protect them.

*Sands v. Child*, 3 Lev. 351, 352, 83 Eng. Rep. 725, 726 (K.B.1693), stated "for the warrant of no man, not even the King himself, can excuse the doing of an illegal act."

### 3. How to Distinguish "Official Capacity" Suits from "Individual Capacity" Suits:

The means of distinguishing between "official capacity" suits from "personal or individual capacity" suits has developed in Eleventh Amendment cases. As noted in *Pennhurst II:*

> The Eleventh Amendment bars a suit against state officials when "the state is the real, substantial party in interest...." (citations omitted). Thus "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter...." (citations omitted). And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief.

465 U.S. at 101–02, 104 S.Ct. at 908–09. The Court, in a footnote, added:

> "The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the

public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted).

*Id.* 465 U.S. at 101 n. 11, 104 S.Ct. at 908 n. 11.

The following year the Supreme Court again noted its means of distinguishing between "personal capacity" and "official capacity." In *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985), the Court stated:

> [A] judgment against a public servant "in his official capacity" imposes liability on the entity that he represents....

The Supreme Court in *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985), again stated:

> Personal-capacity suits seek to impose personal liability upon a government official for action he takes under color of state law. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 237–238, 94 S.Ct. 1683, 1686–1687, 40 L.Ed.2d 90 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978).

These cases noted other features distinguishing "personal capacity" from "official capacity" suits. First, there is a difference as to who is liable to pay a damage judgment.

> Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.[4]

*Kentucky v. Graham*, 473 U.S. at 166, 105 S.Ct. at 3105. Second, unlike in "personal capacity" litigation, in an "official capaci-

---

**4.** A state cannot turn an "individual capacity" suit into an official capacity suit and accord its employees with sovereign immunity from damages by agreeing to indemnify its employees for

any judgments against them. *Spruytte v. Walters*, 753 F.2d 498, 511–14 (6th Cir.), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1985).

ty" suit, the replacement of one public official by a successor results in an automatic substitution of parties in the suit. *See* Fed.R.Civ.P. 25(d)(1); Fed.R.App.P. 43; *Brandon v. Holt*, 464 U.S. at 470, 105 S.Ct. at 877. Third, personal capacity suits for damages require personal involvement and cannot be based on *respondeat superior*. *Rizzo v. Goode*, 423 U.S. 362, 371–73, 96 S.Ct. 598, 604–05, 46 L.Ed.2d 561 (1976). On the other hand, official capacity suits for injunctive relief are allowed against supervisory officials. *Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir.1985); *Adams v. Pate*, 445 F.2d 105, 107–08 & n. 2 (7th Cir.1971). Fourth, personal capacity suits provide defendants with a potential defense of qualified immunity, which defense is unavailable in "official capacity" litigation.[5] In *Kentucky v. Graham*, the Supreme Court noted:

> The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.

473 U.S. at 167, 105 S.Ct. at 3106.

The defendant's position in the present case is that state officials, even when sued in their "individual capacity," are still immune from suits so long as they were acting in their official capacity when the alleged constitutional tort was committed. Such a position is clearly contrary to *Scheuer v. Rhodes* and other case authority. The issue then becomes whether *Will* changed the state of this law.

I acknowledge that the majority opinion in *Will* concludes: "We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."

*Will*, 109 S.Ct. at 2312. Yet, this conclusion must be read in the context of the entire *Will* opinion and the specific legal issue it addressed. None of the Supreme Court's reasoning would suggest that it intended by the use of the word "acting" instead of "sued" to end the availability of § 1983 for damage suits against state officers in their individual capacity who, in the performance of their official duties, violate constitutional rights of citizens. Judge Nelson apparently reads into the language of *Will* a new test for distinguishing personal capacity from official capacity suits:

> The capacity in which the individual defendants were in fact acting is what matters, not the capacity in which they were sued....

*Rice*, 887 F.2d at 719. I believe this is an over-expansive reading of the final paragraph of *Will.*

It is inconceivable that without it being an issue in the *Will* case, without it being briefed and argued by counsel, and without it being discussed by the majority or dissenting opinions, the Supreme Court in *Will* reversed clearly established law on the availability of § 1983 for damage suits against public officials in their individual capacity and abandoned several centuries of Anglo–American common law regarding means of curbing abuses by agents of the state. The defendant's reading of *Will* would undermine the four decades of constitutional tort jurisprudence since *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

■ While some courts and legal commentators note the possibility of such a reading of *Will*,[6] they conclude that such a

---

5. Indeed, all of the Supreme Court cases dealing with qualified immunity for individual government actors assumed these individuals were subject to suit notwithstanding the Eleventh Amendment. Were Eleventh Amendment immunity available to them, the Supreme Court would not have had to struggle with evolving qualified immunity defenses. *See, e.g., Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (suit by arrestee against state trooper); *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (suit by employee against official of state highway department); *Tower v. Glover*, 467 U.S. 914, 104 S.Ct.

2820, 81 L.Ed.2d 758 (1984) (suit by clients against public defenders who allegedly conspired with state officials); *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1984) (suit by prisoner against state prison officials); *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (suit by former prisoner against state prosecuting attorney).

6. *See, e.g., AFSCME v. Tristano*, 898 F.2d 1302, 1305 (7th Cir.1990); *Broussard v. Violet*, No. CV 87–1182 AWT, 1989 WL 251406 (C.D.Cal. July 28, 1989); *Lindsay v. Northern Va. Mental Health Inst.*, 736 F.Supp. 1392, 1395 (E.D.Va. 1990).

reading cannot be correct. If "officials acting in their official capacities" are not "persons" under § 1983, and only "non-official, private or individual act[s]" are covered,

> then § 1983 is completely useless since acts of this type would never pass the threshold requirement of state action.[7]

Burnham & Fayz, *Will v. Michigan Department of State Police: Some Comments and Suggestions for the Future*, 6 Civil Rights Litigation and Attorney's Fees Handbook 73–74 (1990). A fuller elaboration of this analysis by Burnham and Fayz will appear in *The State as a "Non-Person" Under § 1983: Some Comments on Will and Suggestions for the Future*, 70 Or.L.Rev. ____ (Spring 1991).

Most courts also have rejected such a reading. *See Dube v. State Univ.*, 900 F.Supp. 587, 595 (2d Cir.1990), *petition for cert. filed*, 59 U.S.L.W. 3278 (Sept. 27, 1990); *Melo v. Hafer*, 912 F.2d 628 (3rd Cir.1990); *K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846, 853 (7th Cir.1990); *Santiago v. Lane*, 894 F.2d 218, 220 n. 5 (7th Cir. 1990); *Price v. Akaka*, 915 F.2d 469, 473 (9th Cir.1990); *G-69 v. Degnan*, 745

F.Supp. 254, 258–59 (D.N.J.1990); *Florida Paraplegic Ass'n v. Martinez*, 734 F.Supp. 997, 1002 (S.D.Fla.1990); *Derechin v. State Univ.*, 731 F.Supp. 1160, 1164 (W.D.N.Y. 1989); *Kolb v. Ohio*, 721 F.Supp. 885, 895–98 (N.D.Ohio 1989); *Harrington v. Schossow*, 457 N.W.2d 583, 586–88 (Iowa 1990). As the Ninth Circuit noted in *Price v. Akaka*:

> The trustees argue, and the district court found, that Price's suit must be against the trustees in their official capacities because the Complaint's allegations concern the trustees' conduct while performing their official functions. This argument confuses the capacity in which a defendant is sued with the capacity in which the defendant was acting when the alleged deprivation of rights occurred. The former need not coincide with the latter. Clearly, under § 1983, a plaintiff may sue a state officer in his individual capacity for alleged wrongs committed by the officer in his official capacity.

915 F.2d at 473.

Judge Robert Holmes Bell, in *Lawson v. Bouck*, 747 F.Supp. 376, 380 (W.D.Mich.

**7.** This may be an over-broad division of all acts between "official acts" and "private acts." There may be an intermediate category of defendant state officials who, while acting outside the scope of their "official capacity," were nonetheless not in such a private arena as to no longer be acting "under color of" their legal authority. For example, a Resident Unit Manager at a prison might use his authority to do something to an inmate, or deprive him of some right, that the rules exclusively authorize a Warden to do. Yet, it is inconceivable that Congress intended § 1983 jurisdiction in federal courts only against this narrow intermediate category of individual state defendants.

Defense counsel at oral argument asserted that the Supreme Court in *Pennhurst II,* supported her assertion that only private acts, "ultra vires" official duties, such as raping an inmate, would lead to § 1983 damage claims against individual state actors. *Pennhurst II* considered whether a state official could be sued in federal court for violations of state law. Defendants argued sovereign immunity prevented a suit in federal court against state officials under state law. The majority opinion agreed. While concepts of federalism and the supremacy clause required that state sovereign immunity yield to suit against state officials in federal court to vindicate *federal* rights, no similar poli-

cies required such suits to vindicate state law claims. Plaintiffs had tried to avoid the application of state sovereign immunity by arguing the state officers had been adjudicated to be acting "ultra vires" their state authority and thus were not protected by sovereign immunity for injunctive relief. While the dissent accepted this argument, the majority found it unpersuasive. Whichever position one accepts, *Pennhurst II* provides no comfort to defendant because plaintiff here is seeking to enforce *federal* constitutional claims for damages and injunctive relief. Plaintiff, in effect, is claiming that Warden Grayson in his individual capacity is stripped of any claims to immunity because his acts violate the United States Constitution. Whether Warden Grayson's action complied with or violated state law is not relevant to § 1983 jurisdiction.

*Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1960), made it clear that an individual could be acting "under color of state law" within the meaning of 42 U.S.C. § 1983, even though that individual's actions were outside the scope of, or violated, state law. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *Id.* 81 S.Ct. at 482, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941).

1990), questioned the reading of *Will* by the Sixth Circuit in *Rice* and *Cowan,* yet he felt bound by the "latest pronouncements of the Sixth Circuit, regardless of this court's own views."

I do not lightly recommend ignoring Sixth Circuit precedent. Yet, I feel professionally bound to apply the law as interpreted by the United States Supreme Court. I firmly believe that the Supreme Court in *Will* did not overrule *Scheuer v. Rhodes,* nor would the Sixth Circuit presume to do so. Accordingly, I believe the defendant's motion for summary judgment should be denied based on *Scheuer,* and on the Supreme Court guidelines for determining when a case is filed against a state officer in his individual capacity.

 In the present case, Warden Grayson was "sued in his individual and official capacities." Complaint, ¶ 3.[8] Plaintiff seeks damages against Warden Grayson, not against the State of Michigan or the Department of Corrections. Any judgment would be collectable solely from Warden Grayson, and not from the State. Grayson is sued for his personal involvement in the alleged interference with plaintiff's health care. Warden Grayson could have pled qualified immunity had he chosen. Were Warden Grayson being replaced as Warden of the Egeler Facility, he, not the new warden, would remain defendant in this case. Thus, by all the tests established by the Supreme Court, Warden Grayson is being sued in his individual capacity under § 1983 for damages for alleged violations of defendant's First, Eighth, and Fourteenth Amendment rights.

**8.** Plaintiff later attempted to amend this to "his Individual and Private Capacities." *See* Plaintiff's Proposed First Amended Complaint, at ¶ 4. Because plaintiff sought injunctive relief regard-

To borrow from the conclusion of the Supreme Court in *Scheuer:*

Whatever the plaintiff[ ] may or may not be able to establish as to the merits of [his] allegations, [his] claims, as stated in the complaints, given the favorable reading required by the Federal Rules of Civil Procedure, are not barred by the Eleventh Amendment.

416 U.S. at 238, 94 S.Ct. at 1687. Nor do I believe they are barred by *Will v. Michigan Dep't of State Police.*

RECOMMENDATION

For the reasons stated above, it is recommended that defendant's motion for summary judgment be denied.

Any objections to this Report and Recommendation must be filed within ten (10) days of its service. 28 U.S.C. § 636(b)(1); Local Rules 10(c) and C–4. Failure to file objections within the specified time constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Ivey v. Wilson,* 832 F.2d 950, 957–58 (6th Cir.1987); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

ing his foot problems and special shoes which were ordered, as well as damages, this amendment was not allowed because it was not necessary to retain jurisdiction.